## BUTTERICK PUBLISHING CO. v. CONDE NAST PUBLICATIONS, Inc.

District Court, S. D. New York.
Aug. 3, 1931.

Cooper, Kerr & Dunham, of New York City (John C. Kerr, Sturges S. Dunham, and George F. Des Marais, all of New York City, of counsel), for plaintiff.

Mock & Blum, of New York City, for defendant.

FRANK J. COLEMAN, District Judge.

The patent in suit covers an instruction chart to be used in conjunction with a dressmaking pattern, the purpose of which is to show how the various pieces of cloth which have been cut according to the separate parts of the pattern are to be assembled and finished so as to make the completed garment. Dressmaking patterns are used largely by women who are inexperienced in the art, and, after they have cut the cloth into pieces conforming to the parts of the pattern, they are unable to sew them together properly and to incorporate the various finishing features, unless instructions are furnished with the pattern. Long prior to the patent in suit, such instructions were furnished with the patterns, but generally in a form that was inadequate to the needs of a beginner.

The plaintiff is in the business of making and selling patterns and in 1914 its employee, Mrs. Millard, conceived the idea which is the basis of this patent, viz., including with each pattern a separate sheet or chart which would contain a series of pictures showing in succession the various steps in the assembling and finishing of the garment, and showing them in sufficient detail to meet the needs of a novice. The idea was soon put into practice and has proved highly satisfactory. The defendant is a competitor, and in 1927 it adopted a somewhat similar instruction sheet, which is alleged to infringe the plaintiff's patent. The issues raised in this action are whether the patent is valid, and, if so, whether defendant's sheet infringes it.

The prior art shows that the usual method of giving with each pattern the necessary instructions was by printed directions with a few illustrations, and by marks put on the parts of the pattern. The parts were numbered consecutively, which gave some indication of how they were to be joined, and they had various perforations and notches which by registration with each other gave further information. The printed directions were ordinarily put on the envelope which contained the pattern, and were sometimes illustrated by a few pictures of isolated operations. In addition were given one or more pictures of the finished garment, and a diagrammatic representation of all the separate parts of the pattern, sometimes in a layout on the cloth prior to cutting.

It was also common for fashion magazines and text books to contain printed articles describing how garments should be made from certain specified patterns, and these articles were illustrated with a series of pictures portraying various operations in the making of the garment. The illustrations, however, did not purport to show all the steps about which

a beginner would have to be instructed, and were merely incidental to the text.

There were three prior patents (McCampbell, 1905; Anhelt, 1907; and Maxwell, 1908) for instruction charts to be used with patterns, but none of them disclosed a series of pictures illustrating the successive steps. They showed pictures of the finished garment and of finished sections of it, with numbers on various parts of the figures corresponding to the numbers on the various pattern parts, and with symbols or printed directions applied to various parts of the figures indicating essential operations; and a diagram of the pattern parts, juxtaposed so as to indicate what parts were to be sewed together. None of these charts attempted to depict in series the various operations, which constituted successive steps in the assembling and finishing.

The specification of plaintiff's patent states that the purpose of the chart is to give such information "that the tyro can scarcely go astray but can begin the putting together of the garment pieces at the proper point and from there continue in the proper sequence of steps to the completion of the work in the easiest and quickest way"; and the chart is described as having "a series of views illustrating in perspective the pattern or garment as it appears at successive stages of the work" with appropriate printed instructions applied to the figures to aid the user in understanding the procedure. It provides that the pattern parts be numbered in the sequence in which they are used, and that the pictures on the chart be "marked correspondingly so that the pieces can be readily identified," and that the pattern parts have the usual perforations and notches, which would also be shown in the pictures, indicating proper meeting edges, etc. It states that the number of stages necessarily depicted to meet the needs of a tyro would depend on the complexity of the pattern and the number and shape of its parts.

The claims read as follows:

"1. An instruction sheet or chart for users of dressmakers' paper patterns, comprising a sheet or chart having a series of views or figures exhibiting a series of successive stages in the making of the garment; said views or figures showing also the appearance of the individual parts or pieces as they are successively assembled and their relations to each other at the several stages and illustrating the operations by which the stages represented are reached in making the garment.

"2. An instruction sheet or chart for users of dressmakers' paper patterns, the sheet or chart having a plurality of views or figures illustrating in proper sequence the operations to be performed in making the garment, the views or figures showing different stages of the work as the same progresses and exhibiting the arranging together of the parts in the relations which they are to have to each other in the finished garment.

"3. A dressmakers' pattern outfit, comprising a paper pattern composed of a plurality of pieces marked with identifying characters, and an instruction sheet or chart having a plurality of views illustrating a plurality of successive stages of the work and the procedure to be followed to reach such stages, and indicating the order or sequence of steps to be followed in making the garment; the parts or pieces shown in the several views or figures being marked with characters identifying them with the corresponding pattern pieces."

The validity of the patent is attacked first on the ground that such a chart, having no structural characteristics, is not a patentable article of manufacture. The claims do not call for any particular physical form or layout, but merely require that the chart contain a series of pictures illustrating certain things. Furthermore, even the substance of the information to be given by the series of pictures is left indefinite, and no formula or rule is set forth by which the series can be determined. The pictures of course vary for the different patterns, and the number and the nature of the steps and operations illustrated are to be governed by the needs of a "tyro," but no rule is indicated for determining what they should be. The defendant contends, therefore, that the patent covers merely an idea of the best method of imparting instructions, rather than a patentable means. If this were the only issue in the case, I would feel constrained to hold the chart not patentable, even though that would tend to impair the validity of the three cited patents also; but since there is another ground upon which the decision may be based, it is advisable not to conflict with an apparently well-settled policy of the Patent Office, until the Circuit Court of Appeals has passed on the question.

The second ground of alleged invalidity is that the patent was anticipated by the articles in the fashion magazines and text-books. The original examiner in the Patent Office rejected the application on the ground that it was anticipated by the three patents cited

above, but his ruling was reversed by the board of three Examiners in Chief, and the defendant in its brief acquiesces in the later ruling. The magazine and text-book articles were not considered by the Patent Office, but are the defendant's sole reliance in its brief upon this point. As already stated, those articles did not attempt to show by the illustrations the complete series of successive steps which would have to be explained to a novice. The text performed that function, and the pictures were merely ancillary to it. While it is true that the patent specifies that printed directions may be used with the plaintiff's pictures, it is the latter which are the principal factor. In determining whether Mrs. Millard's contribution to the art amounted to invention, it must be borne in mind that it satisfactorily solved a problem of which the solution had been long and unsuccessfully sought by the trade, and the patent was generally respected for about eight years before the defendant commenced its alleged infringement.

Assuming that the patent is valid, it is quite apparent that it covers only a slight advance in the art. From a business point of view, the innovation was a very notable and serviceable improvement, but, considered as invention, it was of a low order at best. Every feature of the plaintiff's chart considered separately was old, and there was certainly no invention, unless the series of pictures represented in succession all the steps about which a novice would require enlightenment.

The claims expressly stipulate that the steps depicted should be successive, and impliedly that they should cover all the stages and operations about which a "tyro" would need instruction, so that she could start at the first picture, and, by following the series, complete the garment. Unless defendant's charts complied with these requirements, or purported to do so, there was no infringement. A few of defendant's earlier charts did show a proper sequence in the illustrations, but as soon as the present controversy arose the defendant changed its practice so that its charts no longer indicated (nor purported to indicate) the proper sequence by means of the pictures.

As to the other requirement, however, the defendant's charts never fulfilled it, so far as I can see. It is very difficult for a man inexperienced in dressmaking to determine what steps and operations must be depicted in order to show a feminine "tyro" how to assemble and finish a dress, and the plaintiff had the burden of proving that defendant's illustrations were adequate for that purpose. The patent contemplated that printed directions be given with the various pictures, but purely incidentally; in other words, the printing was to be ancillary and explanatory of the pictures, rather than as in the magazine articles where the pictures merely illustrated the text. A careful examination of defendant's charts fails to disclose how any novice could acquire the necessary information from the pictures and such printed directions as were purely ancillary. Furthermore, the testimony of the experts seemed to me to preponderate in favor of such a finding. The detailed testimony of Oliver was convincing that many operations which an inexperienced woman would need to have elucidated were not depicted. Certainly there is less information imparted by defendant's pictures than by the plaintiff's, and, on the other hand, the defendant's printed directions are a relatively larger factor than the plaintiff's. In other words the defendant's charts unquestionably are addressed to more intelligent users and are closer to the prior magazine and text-book articles than are the plaintiff's, and I am not convinced that they come within the narrow scope of the patent claims.

An additional ground for finding noninfringement of the third claim is the fact that defendant's pictures do not show the separate parts of the garment "marked with characters identifying them with the corresponding pattern pieces."

Decree for defendant.